118-0165 Beverly L. Joiner v. Coop County Clerk of the Circuit Court Counsel, you may proceed. Thank you, Your Honor. May it please the Court, my name is Jim Green. I represent Beverly Joiner, the accountant in this matter. Before I begin my argument, I have one statement to make. 99% of our brief was based upon the Gray's decision, which referred to the three other similar cases by Marielle, Metropolitan Water Reclamation, and Litchfield. Both cases, all those cases talked about what is the standard to reverse the commission, both against the manifest way to the evidence, or whether it's a question of law standard. We specifically prayed that it should be on the manifest way to the evidence. We didn't definitively speak out and say we believe that you should change it as a matter of law. When I reviewed this eight days ago, I realized that we had definitively decided, so I picked up the phone, called counsel and advised him that I would be arguing that it's against the law so that he wasn't saying anything when he got here. Just to clarify, I'm not certain what you're saying. Are you saying that it should be de novo, not manifest way? What are you saying? I'm saying that it's either one you could decide, either one. It's just that we didn't definitively pray that you change it as a matter of law. My interpretation of the record is that it should be changed on the basis of the law, certainly because it's lower standard. With that said, the arbitrator in this case ruled against the petitioner, so did the industrial commission with their famous five words. We packed up the firm of the arbitrator, and there was one assent from the commissioner. One commissioner said that it should be compensable. I would like to start the analysis by looking at the arbitrator's analysis of this case. It's one page, two paragraphs long. Page four is his decision, and this is what he finds. The arbitrator finds that the petitioner was not exposed to a greater risk than the general public of walking across California Avenue, which is owned and maintained by the city of Chicago. He then cites the caterpillar case. He has one more sentence from the caterpillar. Caterpillar's curves and the risks inherent in traversing them confront all members of the public. First of all, the caterpillar had nothing to do with its defect in the curve. In this case, as I mentioned earlier, Mrs. Schroeder is the only one to testify. There is no conflicting evidence given whatsoever. In fact, in her brief, out of these briefs, they don't even raise the defect. They don't even mention that at all. The defect is not an issue. Her high heel went into a hole, and she fell. She was on a curve. I guess the commission believes that if you measure your curve, whether you're right here or 50 yards away or 2,000 yards away, that's a caterpillar case. That's not what this case is. Counsel, let me ask you sort of a poignant question. As you know, there are three categories of risk to which an employee may be exposed. One would be risks distinctly associated with the employment. Second would be personal risks. And third would be neutral risks which have no particular employment or personal characteristics. An injury arises out of employment if its origin is in some risk connected with or at least incidental to the employment. So which type of a risk is this? It's a risk that she was given a free parking lot to park in, restricted only to employees, jurors, and police officers. She has been going on that path every day for 22 years. She has to cross that boulevard to get to the front entrance of the criminal courts building. So it's an increased risk. It's mentioned in Metropolitan, I believe it is, that she's required to do it every day. It's a higher risk. So what you are saying, in so many words, is it's a risk, in your opinion, distinctly associated with the employment. Yes. That would be one of those risks. Yes. There's no question it's a defect as a whole. She thought it. It's not disputable. Now, the second part of the arbitrator's legal analysis, which is adopted by the Commission, is that the members of the general public were crossing California Avenue. Although the petitioner parked at an employee-only parking lot, she was not required to park there or to park elsewhere. The accident did not take place in a public parking garage, but at a California Avenue. Consequently, the arbitrator finds that this is not rising out of the courts of employment. So we then have this legal analysis, and that's adopted by the Commission, by two of the Commissioners, that if the general public walks down the same area, it's not that small. Or if she, the parking lot that she's given, if she could park other places, like she could park down California Avenue, three or four blocks, a good field, or a soldier's field, then it's not compensable. That's not what the law is. That was, I don't understand the reasoning whatsoever. As I mentioned before, I agree, basically, she is Reyes. And Reyes, to refresh the Court's reflection, she works in the Kentucky Courthouse, and she went to a discussion meeting at about the last morning. She then is approaching the courthouse and then realizes that the entrance for the employees closes at 9.30, so she is required then to go to the back of the courthouse, and she's a couple of feet from the door, where the foot goes into, and even, as you said, it was a half inch to an inch difference. Counsel, let me ask you this. Is the reason why she was crossing the street when she fell relevant at all? Is the reason why she was going back into the building at the time she fell relevant at all? I thought she was going to retrieve her glasses. Did I miss something? No, you didn't. No, you didn't. You are correct. Correct. Two things. One, she was sent initially by her employer, they were going to put her in a car with the supervisor. She was called. He specifically asked her to do something for the party, which she did. Yes. But as I understand it, in the record then, she realized she needed her glasses, went back to the parking garage, and fell coming back with her glasses to the courthouse. Wait a minute. Excuse me. Excuse me. She never found her glasses in the car. She never found her glasses. But that's to mean she went back to the garage. Yes. She never found them. But she was like a traveling employee. Why is she a traveling employee? Because she went to get her glasses in her car? No, no. But she went to pick up the cake. Your argument would be great if she got hurt when she went to pick up the cake. She didn't. She's no traveling employee. She works at 26th Street as a clerk. Her job is in 26th Street. It's not walking across the street to go find her glasses. Well, then maybe we ought to look at Litchfield. Because that one definitively talks about my client testifying that she needs her glasses to do her computer work. Wait a minute. Hold on. If your theory was correct, if an employee left their glasses at home, you'd find that if they got in an accident going back to get their glasses that they're covered. That's nonsense. But she thought she had her glasses. I know what she thought, and she was wrong. They weren't in the car. She went from the place of employment across the street to get her glasses. She needed her glasses to work. And she gets hurt. After she finds out the glasses aren't in the car, she goes, she intends to go back to work. And she's hurt as she crosses California Avenue. We know what the facts are. So tell me why she's a traveling employee at the time she fell down. Well, maybe she was finishing up a special errand that she was given. No, she wasn't finishing up a special errand. The errand was finished up when she got back from the cake. She couldn't go to work because she didn't have her glasses. Correct. And that's the same fact situation as in Litchfield, Your Honor. The argument is going to be she needs her glasses to do her work. So it's part of her work response. She needs glasses to work, right? Yes. In Litchfield, this court held that the employee was a, you know, was an assistant to help people bathe and move around the nursing home. She forgot her gate belt in her car. She went out there to get that. Got it because she needs that to do her employment. Same as my client needs her glasses to be able to do her computer. It's the same thing. It's not the same thing. First of all, in Litchfield, the belt was actually in her car, and she had to get it. And she fell down, and she was carrying it back. But second of all, glasses aren't a specific tool of your employment. They have to do with your physical deficiencies. You need glasses to see. So that's not something that's peculiarly employment related. I think it is, Your Honor. You're hired to do computer work. You need glasses to be able to see that. Wait a minute. Excuse me. Excuse me. Excuse me. If you have 20-20 uncorrected vision, you don't need glasses to see a computer. I don't know why it is, but. Well, it's obviously not 20-20. You're wearing glasses. I know. Okay. So that doesn't make it a tool of your employment. Sure it does. No, it doesn't. I can't see a computer. If I can't see a computer, how can I do the work? Counsel, if your theory were correct, every lawyer that wears glasses and forgets them at home and falls down in the street on the way back to the parking lot to get their glasses at home would have a compensable workers' compensation case. That's absurd. No, that's not what I'm saying, Your Honor. What I'm saying is she was on a special errand. Counsel, stop. Please. She was done with the errand. She went to the gate. She came back to work. She could not commence work because she did not have her glasses. She was not on any errand when she fell down. Either getting her glasses is an act that's included within her employment or it's not. If it's not, she fails to sustain a burden that she had an accident arising out of and in the course of. If it is part of her work, then she may have a compensable accident. The question is, is getting the glasses that you forgot, number two, she never got them, going looking for the glasses you didn't have, something that is included within your employment duties. That's the issue. So if she did find the glasses, it would be compensable. No. The glasses are not a tool of her occupation. The belt in Litchfield is. So that's your strongest argument. You're analogizing this to the belt in Litchfield, correct? Yes. All right. Did you complete that argument? Did you make that argument? What? Oh, yeah, I just made it. Litchfield, yes. You know what I'm saying, just now, I know you fielded some questions, but I think you were going to make the argument as how the glasses are analogous to the belt. Yes. I have hearing aids. If I didn't have my hearing aids here and I left them downstairs, I wouldn't be hearing anything you said. I need these to do my job here today. And she was still, when she left to do this special errand for her employer, she didn't have to check out or check back in, and she checked with her employer when she went to go look for her glasses again, and again she didn't have to check out or check in, which you normally would have to do if you're on your break or your lunch period. That shows she's still in the course of her employment when she went out to the parking lot, was open to the employer, yet going out. You don't have to check in or out. Same as when she went to pick up a paper box. I don't know why, if I don't have my glasses and my hearing aids here, I'm not able to do my job. All right, so you would agree. If she was just simply going out for coffee and came back in and fell, that would be different. You're saying she needs the glasses to perform her daily required activities. Yes. Yes. And nowadays, computers are everywhere. I know I have to get right up to the computer to be able to see it. So the – let me quickly go over the facts. Do you have any question about the fact that there's no dispute as to – We don't have any question on the facts at all. There's no question. On the facts. Only the facts. But your time is up, and you'll have five minutes to reply. Oh, okay. I would just be interested if you reversed the case. You found the grades, the children, and the other issues. And it's – I'm going to be brief. First, counsel, this is Peter Russica on behalf of the county. Thank you. As counsel suggested, you did call me up there. You suggested you were going to raise a new argument about the table for review. But we are here on a map, so we have the evidence arguments, standard review. In this case, the arbitrator, the commission, did find that the petitioner did not sustain an accident or rising out of the ward in the course of her deployments.  But the commission basically relied on the petitioner's own testimony. Bob heard actions that day, and I think there's already been extensive discussion and questioning about going back and forth to the county of Alaska, so I don't belabor that. But the fact of the matter is she wasn't on a deploy-required trip. She wasn't performing any work-related activities at the time. What about this – You know, and that argument has some intuitive appeal, but what about this analogizing this case to Litchfield, in which the woman went to a car to get something, an implement, if you will, that she needed to perform her job duties? He's saying getting the glasses is necessary for her to perform her job duties. She can't perform them without the glasses. How do you respond to that? I think it's significant, Litchfield, that the tool belt was actually deploy-required for her job duties. In fact, as you mentioned, she would have been disciplined if she had done that on the work site. So if there was a sense that the employer would control her, if Justice Hoffman was on to something, talking about the fact about the glasses, what if she left the glasses at home, for instance, does that mean the trip all the way home back is going to be covered for purposes of workers' compensation? That would be an enormous opening up of liability. And I think that takes Litchfield out of what he's intended to do. I don't mean to belabor this point, but it is sort of critical. You're saying, well, you know, the employer obviously wants her to be able to do the job, so that's the reason Litchfield's commission ruled in the claimant's favor. If she were to sit there all day and not be able to see the computer and do her job, would her employer want her to do that as opposed to going across the street and getting your glasses? I don't think so, John. You don't think what? The employer would not want the employer to sit there and not be able to see the computer. But I think you have to really get at what's intended under the Workers' Compensation Act, and this is the arising out of the department part of it, is that there's some employer requirement or direction that's the reason the employer is doing this. Not the fact that you need glasses to work. Let's go to these facts, then. You said there has to be some involvement by the employer. Is that correct? Yes. Is that where you're going? Yes. Okay. For the purposes of most of these cases, it's the route the employer's walking, but some activity the employer is doing. In this case, the tools. The tool about English field, for instance. All right. Now, the facts of this case, what is there, if any, in the record, that she left the employment premises, so to speak, and went to look for her glasses?  I don't think there's anything specific in the record. In the record, I've put this one. She testified she did. I never found her doing that. She testified she did what? Went out to get her glasses. Didn't she further testify that she'd asked for permission to go? You know, I don't recognize her. Well, that may be important. Yes. Here. An injury is going to arise out of the employment. If at the time the employee was performing acts which she was instructed to perform by the employer, she certainly was not instructed to go get her glasses. There's no evidence of that. Acts which he or she had a common law or statutory duty to perform. She had no common law or statutory duty to go get her glasses. And there's one thing left. Acts which the employee might reasonably be expected to perform incident to his or her assigned duties. Now, is going to look for her glasses that she didn't bring with her an act which she might reasonably be expected to do incident to her duties? Well, there's certainly nothing in the record that suggests that her glasses are required for her work. She suggested she testified she needs them to work. But as far as her work duties, there's nothing requiring that she wear glasses, like safety glasses or something like that. So there's nothing as far as her work duties she's required to. And then I guess the question you raised earlier, Justice Hoffman, is does she forget her glasses when she comes into work? She goes back home. Is there anything that she encounters or any risk along the way then to become part of the job because of that? I think we're just stretching out what would be compensable under the act, under which goes by doing that. Were you there at the arbitration hearing? Yes. Do you recall her testifying as to whether or not her employer, she did mention to her employer and received her permission to go get the glasses? I have a question. Did she mention this? Mention what? That she did ask her employer for permission? To bring her glasses. And the employer says okay? Presumably. But there's no evidence at all that the employer said one way or the other. Well. There's no testimony. There's no testimony from the employer. But she testified and asked for permission and she received permission. Is that the evidence? Or do you know? I don't recall a specific testimony on that issue. That wasn't really the fault. It's just a fact. Well, does that fall within the ambit of your brain? Excuse me. Did she ask if she could go across the street and she merely informed Smith that she was going to return to her car to retrieve her glasses, which wasn't? And that's a particularity I don't recall if her testimony was on that issue. Do you agree with this? Mm-hmm. It's the best of my recollection. She had just informed her supervisor that she was going to get her glasses. What page is this? This is on page five. She testified she needed her glasses to continue to work on the computer. Yes. According with this. And so she advised her super Smith. She thought she left her glasses in the car and was returning to her car to retrieve the glasses. Is there anything in the record that you recall that Smith told her she could go? Not that I can recall, Your Honor. Okay. See, a lot of this case is focused more on where she was asked at the time and the question of whether or not this was the sole access route to her work. And I submit that the arbitrator's findings and the commission's findings, therefore, were substantial enough to support the finding that she wasn't in the course of her rising out of her employment at the time. Because it wasn't the sole access? Correct. I mean, there was, based on her testimony, she didn't have to park there. The commission's findings were decisions supported by the fact that she didn't have to walk that route. That was not, in all these cases, I'm not going to say it's the primary one, but I found that she was on the employer's premises at the time. There was some sole access, some employer required route of access to the employment. That was the location of what the special hazard was that the claimants in each of these cases encountered. In this case, she was on a publicly owned street, City of Chicago, that was stipulated to. I mean, they didn't operate by the City of Chicago. Well, the city-owned streets. What if the facts were she was required to park in that particular lot and then fell crossing a public street to get to work? Wouldn't that be compensable? That would be pretty compensable, Justice Hudson, but that was not the case here. And that's why I say, based on her testimony, that she was not required to park in the parking lot. But nevertheless, for 22 years, as I recall, she parked there because that was the preferred lot, correct? That's true. Does that make a difference? I don't think so. Because in this case, what we're talking about is whether she was required to or not. And perhaps in these cases, for us, perhaps it's a lot more important that we actually study a different animal, because in that case, we have the employee walking the streets back and forth as part of her job duty. In fact, I believe in that case, they actually talk about the street risk doctrine, which was the employee required to be walking back and forth as part of her job duties and covering the risk that the general public encountered to a greater degree than the general public. But as to the others, for instance, Litchfield and Bomarito, we're talking about somebody who's on the employer's premises or accessing that premises. The courthouse stops, the alley that the employer required the employee in Bomarito to access, the back door through this alley, which then became the employer-required access. But that wasn't the case here. She was simply, she testified that she was able to park anywhere. The commission relied on that. So essentially, that's a defining fact, or if anything, it's a question of fact and law as to whether or not this is the sole access route for her to get to her employment, which I assume should be upheld by this court now. Not to belabor the point about the sole access, but doesn't Litchfield say a special hazard or risk is encountered as a result of using the sole or usual access route? His argument is going to be this is the usual access route for 22 years. It may not be the sole. She may have other choices she could pay and why somebody would pay if they didn't have to. I don't know. But does she follow it in the ambit that this is the usual route? And the question is, is it the sole route? The sole or usual route? Why, again, on the employer's premises at that point. Here we're talking about a community street. Isn't the greater point that she gives is that the claimant was not required to park in the county lot? The fact that there's some lot somewhere that employees can use whether they pay for it or not really isn't relevant. It's just that the county didn't mandate it. Because if it were in the record, I think we would find that 95 percent or something of that nature the people that work in the criminal courts building in 26 park in that particular parking lot. I guess I'm not trying to argue. I'm just making the point that the strength of your argument is that she was not mandated to park there. The fact that there's other available options really doesn't do anything for this justice. In the context of this case, I further argue that that is a question of fact or a question of law and fact which then the commission found that it did. I submit that should be a follow-up at this point. Unless you have any other questions. No, thank you. Thank you, counsel. Counsel, you may reply. In response to Judge Kavanaugh's statement, I think it would be closer to 100 percent of the people park there. Actually, it's a parking lot that only employees and police and jurors can get into. A sheriff knocks the public out. With regards to whether or not she asked Gary Smith and told him that she was going back for her glasses, I don't, I'm not sure if I have it verbatim, but if you look at the record from 64 to 68, she realized, this is my notes, she realized she had no glasses, which she needed for her job. She told Gary Smith, and again, she did not have to clock in or clock out, so she told Gary Smith she was going to get her glasses. This is something she needs for her job. It's also in the brief, on page 5 of her brief, she advised Supervisor Smith she thought her glasses were in the car and she returned to her car, so she did notify him again. We know she notified him. The question was, did she ask him or did she tell him? That was the issue. That's what we were talking about. We knew what was in your brief. The debate we were having was, did she ask Smith for permission or did she just tell Smith she was going across the street to get her glasses? I can't answer that. Yeah, we read what was in your brief. We know, we'll look. As far as being required, actually, everybody's missing this, me in particular. On page 51 of the record, the question was, are you required to park in a specific location at work? She goes, yes. When were you told that? Twenty-two years ago when I was hired. They asked her later, further down. That's 51 of the record. And 88 and 89 of the record. Are you required to park in areas across the generation? She says, that's the only place where I was told to park. I said, we can park other places. And she answered, no, because when I came for orientation, because I came here, they told me there was free parking for employers across the street from the court building. It's for employees only, police and jurors. So she was required to park there. And it doesn't make sense. There's 500 people in the building to get up and walk out every two hours and feed the meter. This benefits the employer, and it benefits the employee. Employee gets free parking. The employer gets the ability to get up to the workforce there in eight days, as opposed to 500 people walking out every two hours to feed a meter. And, again, I think classes and hearing aids and other appliances that people need, especially older people, is something that's required to do the job. I can't work the computer without this. I have to sometimes take my glasses off and put my nose right up to it. She needs that to do the job. That's her job. If she can't do that, they'll find someone that can. Are there any other questions for the court? I believe so. Thank you, Counsel Ball. Two arguments in this matter will be taken in our advisement. Written disposition shall issue. The court will continue to assess until 9 a.m. tomorrow morning.